UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JILL V.,

**Plaintiff,**

                                                          Case No. 1:21-cv-00793-TPK

    v.

**COMMISSIONER OF SOCIAL**            OPINION AND ORDER
**SECURITY,**

**Defendant**.

## OPINION AND ORDER

      Plaintiff filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security.  That final decision, issued by the Appeals Council on May 18, 2021, denied Plaintiff's application for disability insurance benefits. Plaintiff has now moved for judgment on the pleadings (Doc. 7) and the Commissioner has filed a similar motion (Doc. 8).  For the following reasons, the Court will **GRANT** Plaintiff's motion for judgment on the pleadings, **DENY** the Commissioner's motion, and **REMAND** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

### I.  BACKGROUND

      Plaintiff filed her application for benefits on February 12, 2019, alleging that she became disabled on October 30, 2015.  After initial administrative denials of that claim, a hearing was held before an Administrative Law Judge on July 30, 2020.  Plaintiff and a vocational expert, Lynn Paulson, testified at the last hearing.

      The Administrative Law Judge issued an unfavorable decision on September 30, 2020. He first found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2018, and that she had not engaged in substantial gainful activity since her alleged onset date.  Next, the ALJ concluded that Plaintiff suffered from severe impairments including depressive disorder, bipolar disorder, anxiety disorder, and migraine headaches. However, the ALJ determined that these impairments, taken singly or in combination, did not meet the criteria for disability under the Listing of Impairments.

      Moving forward with the sequential evaluation process, the ALJ then concluded that Plaintiff had the ability to perform a limited range of light work.  She could only occasionally climb ramps, stairs, ladders, ropes and scaffolds, and she could occasionally balance, stoop, kneel, crouch, and crawl.  Additionally, he found that Plaintiff was able to perform only simple, repetitive, and routine tasks and not at a production rate, that she could make simple work-related decisions, and that she could interact occasionally with supervisors, coworkers, and the

public.

Next, relying on the vocational expert's testimony, the ALJ determined that, with these limitations, Plaintiff could not perform any of her past relevant work. However, she could do various light jobs such as merchandise marker, inspector/hand packager, and office helper. As a result, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act.

Plaintiff, in her motion for judgment on the pleadings, raises two claims of error, stated as follows: (1) "Did the ALJ create a mental RFC without medical opinion or clear functional assessment and rely on improper lay assessment of complex psychiatric evidence?"; and (2) "Did the ALJ's RFC fail to reflect all of Plaintiff's limitations from her migraines?" *See* Plaintiff's memorandum, Doc. 7-1, at 1.

## II.  THE KEY EVIDENCE

### A.  Hearing Testimony

Plaintiff, who was 52 years old at the time of the hearing, first testified that she lived with her daughter and was able to drive a car. She had completed some college courses. Her last job was at a Tops grocery store stacking shelves and unloading pallets. Before that, she had done laundry at a hotel and was a cashier clerk at a dry cleaners. She had also been a framing clerk and a receptionist.

When asked why she could not work, Plaintiff said that a combination of her emotional issues and physical pain prevented her from being employed. Lifting and exposure to light both made her pain worse. She was doing physical therapy and taking over-the-counter medication for pain and was also taking medication for migraine headaches. When she got a migraine, which happened multiple times each month, she was fatigued and nauseous.

Plaintiff also testified that she could walk one block, lift a gallon of milk, and climb a flight of stairs (although with some difficulty). She was also seeing a counselor and a psychiatrist, the latter of whom had prescribed medication for her. Plaintiff said that she experienced difficulties with her memory, concentration, and attention, and had trouble making decisions and relating to other people. She could occasionally go to functions at her daughter's school and could use public transportation. Plaintiff also testified that she struggled to do household chores.

The vocational expert, Ms. Paulson, was first asked about Plaintiff's past work, and she said that it ranged in exertional level from light to heavy. She was then asked questions about a person with no exertional limitations but who was limited to simple, routine, repetitive tasks and occasional contact with others. She said that such a person could do Plaintiff's past work as a laundry worker. If the person could only do light work with some additional limitations, however, that job would be excluded, but there would be other jobs which could be done,

including merchandise marker, inspector and hand packager, and office helper.  Those jobs could also be done by someone who could interact with others only rarely.  If the person could do only sedentary work with no interaction with others, she or he could not be employed, and the same would be true if the person were limited to only occasional handling and fingering.  Any more than one absence per month would also not be tolerated, and someone who could not tolerate exposure to office-type lighting could not do those jobs.

### B.  Treatment Records

The pertinent medical treatment records show the following.  By early 2016, Plaintiff was being seen regularly for her bipolar disorder.  A treatment note from that time period shows that Plaintiff had been having headaches but they had stopped, and she was also showing improvement in her depressive symptoms.  Her bipolar disorder was described as being in partial remission.  Subsequent notes state that her migraines were being well-managed with medication.  However, during 2016 she was also often characterized as confused and with limited cognition.

In August of 2016, Plaintiff was described as having a moderate level of depression and having a diminished level of concentration, and the same was true in February, 2017.  That latter treatment note (Tr. 274-77), made by Dr. Capote, contains this statement: "The patient's level of function is she can attend to her ADL's & take care of her daughter but cannot work."  Later that year, she underwent a mental health evaluation because she was changing doctors.  She reported a long struggle with depression, anxiety, and migraines, all of which had improved after she stopped working.  Plaintiff was maintaining a good daily activity level, however, and her mood improved throughout 2018, although she continued to be circumstantial and easily distracted, as well as somewhat preoccupied with somatic complaints.

Plaintiff continued with mental health counseling into 2019.  Notes from that year show that her attendance at counseling sessions was fairly poor, but records from her primary care physician state that she was stable and was doing well without complaints.  Prior notes from her physician indicate that, with the exception of some low back pain, her physical exams were basically normal.

### C.  Opinion Evidence

Apart from the one statement quoted above from Plaintiff's treatment records, there are no medical opinions concerning Plaintiff's ability to function.  All of the state agency reviewers concluded that there was insufficient evidence to evaluate her level of either physical or mental functioning.

### III.  STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled."

> *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").
>
> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012)

### IV.  DISCUSSION

#### A.  Lay Assessment of Functional Capacity

As her first claim of error, Plaintiff asserts that the ALJ did not properly account for any limitations arising from her migraine headaches, including her sensitivity to light and the frequency of her headaches.  Essentially, Plaintiff argues that nothing in the treatment notes contradicted Plaintiff's testimony on these matters, and that there was no medical opinion evidence on which the ALJ could have relied to conclude that these limitations were non-existent or not as severe as Plaintiff claimed them to be.  In response, the Commissioner argues that there is substantial evidence, mainly in the form of Plaintiff's own statements to treating sources, showing that her migraine headaches were under control and did not prevent her from either working (albeit on a part-time basis) or caring for her daughter.  The Commissioner also contends that the mental limitations imposed as part of the ALJ's residual functional capacity finding were sufficient to account for any work-related restrictions arising out of Plaintiff's migraine condition.

To some extent, the Commissioner's opposing arguments miss the point of Plaintiff's claim.  Mental limitations such as a restriction to simple tasks and to occasional interaction with others appear to be unrelated to conditions which might exacerbate migraine headaches, and, in particular, to light sensitivity, which is a primary focus of Plaintiff's argument.  Plaintiff also

argues, in her reply, that the evidence compels a finding that she had headaches of sufficient frequency to affect her ability to work unless some additional functional restrictions were added to account for that aspect of her impairment.

As to the latter part of this argument, it is important to focus on the evidence upon which the ALJ relied in determining, at least implicitly, that Plaintiff did not have migraine headaches frequently enough to meet the minimum requirements of unskilled work, such as the need to stay on task or not to miss more than one day of work per month.

On this issue, the ALJ first concluded that "although the claimant testified at the hearing that she has 10 migraines per month, migraines of this frequency are not reflected in the claimant's treatment records...." (Tr. 23). The ALJ also made a credibility finding on this issue, noting that Plaintiff's testimony concerning her symptoms was not entirely consistent with the evidence. (Tr. 26). The ALJ's summary of the medical records, which appears to be accurate, includes the fact that Plaintiff only generally reported intermittent chronic headaches in 2016 for which various treatment methods were prescribed and which improved during that year; that in 2017, she reported photo-phobia that and also said in April that her headaches had improved (although they apparently worsened in November); and that in 2018 she continued to take medication for migraines. As the ALJ noted, nothing in any of these records substantiates or repeats Plaintiff's testimony about her having experienced migraine headaches ten times per month. Substantial evidence therefore supports the ALJ's finding that Plaintiff's headaches were less frequent than she testified.

At the same time, however, the ALJ did conclude that Plaintiff's migraine headaches constituted a severe impairment, meaning that they had some impact on her ability to perform work-related functions. And it would be unreasonable, on this record, given the treatment records, which include both statements from the Plaintiff about her medical history and the treating providers' response to her complaints of intermittent migraines, to conclude otherwise. The record also contains both testimony and medical history that light exposure was a trigger for Plaintiff's headaches, and there is, as Plaintiff correctly points out, no evidence to the contrary. The ALJ's conclusory assertion that the mental functional limitations he imposed were sufficient to address any limitations arising from migraine headaches of at least some frequency and triggered by exposure to bright lights, is, on this record, a conclusion that lacks substantial support. Consequently, the case must be remanded for further consideration of this issue.

### B.  Mental Residual Functional Capacity

Plaintiff's second contention is that the ALJ lacked a substantial basis for evaluating her mental residual functional capacity. As noted above, none of the state agency reviewers thought that the evidence was sufficient to express an opinion as to any psychologically-based restrictions that might flow from Plaintiff's mental impairments, and no treating source expressed an opinion on that issue apart from the one statement, quoted above, that she "cannot

work." The ALJ disagreed with all of these opinions and determined that Plaintiff could do simple repetitive work with occasional contact with others. Plaintiff argues that this conclusion had to have been based on the ALJ's lay opinion, and that such a decision-making process is improper. The Commissioner responds that the record was sufficient, even without any reliable opinion evidence, to allow the ALJ to make the determination which he did.

In discussing Plaintiff's mental limitations, the ALJ, after summarizing the treatment records concerning Plaintiff's anxiety, depression, and bipolar disorder, said this: "The undersigned has accounted for the claimant's depressed mood, circumstantial thought processes, restlessness, borderline/dependent character traits, and decreased concentration with the mental limitations in the above residual functional capacity." (Tr. 29). He added that "evidence of her improved depression with treatment, her ability to work privately to help care for a woman, her intact memory and judgment, and her cooperative and friendly presentation support the conclusion that greater mental restrictions are not required." *Id*. The ALJ rejected Dr. Capote's statement that Plaintiff could not work, noting that it was conclusory and did not contain any specific functional limitations; he also found the two state agency reviewers' opinions not to be persuasive because "there is sufficient evidence in the file to evaluate the claimant's ability to perform work-related activities through her date last insured." (Tr. 30-31).

It is somewhat problematic that the ALJ, who is not a mental health professional or medical expert, found the evidence of record sufficient to evaluate Plaintiff's functional capacity when neither of the experts who considered the same evidence came to that conclusion. It is also, as Plaintiff argues, problematic that the ALJ derived his findings directly from the treatment notes, none of which even hinted at functional limitations or functional capabilities. This Court has been skeptical of an ALJ's ability to come up with specific mental functional limitations on the basis of treatment records alone where there is no reliable opinion evidence on the issue and the records themselves do not comment extensively, or at all, on the issue of how limited or how capable the claimant might be. *See, e.g., Jennifer S.-M. v. Comm'r of Social Security*, 2023 WL 3455435 at *9 (May 12, 2023); *Hopper v. Berryhill*, 2017 WL 5712307 at *3 (W.D.N.Y. 2017). While this is certainly not a hard and fast rule, in the context of the evidence in this case, the Court finds that the ALJ did not have a substantial basis for his assessment of Plaintiff's mental residual functional capacity, and that issue should be addressed on remand as well.

## V.  CONCLUSION AND ORDER

For the reasons stated above, the Court **GRANTS** Plaintiff's motion for judgment on the pleadings (Doc. 7), **DENIES** the Commissioner's motion (Doc. 8), and **REMANDS** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four

**/s/ Terence P. Kemp**
**United States Magistrate Judge**